# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel., | ) | |
| JERVONE WALKER, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 06 C 477 |
| v. | ) | |
| | ) | |
| JOHN CHAMBERS, | ) | Judge Joan B. Gottschall |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Jervone Walker ("Walker") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below, Walker's petition is denied.

**I.     Procedural History**

In 2001, Walker was convicted in Cook County of the first-degree murder of Ernest Jackson, and was sentenced to a 35-year prison term. Although the murder took place in late 1993 and the arrest warrant issued soon after, petitioner eluded arrest until March 1999. After his conviction, petitioner appealed to the Illinois Appellate Court and his judgment was affirmed. Petitioner filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, which was denied on January 26, 2005. On January 20, 2006, petitioner filed his federal habeas petition with this court and argued that his due process and equal protections rights were violated when: (1) the trial court failed to instruct the jury on second-degree murder; (2) the prosecutor made improper remarks; (3) the trial court failed to declare a mistrial after the jury was prejudiced by witness testimony; and (4) the appellate court failed to consider evidence and testimony of witnesses. On March 16, 2006, the respondent filed its answer.

## II. Factual Background[1]

At trial, Gerald Cannon testified that on November 10, 1993, he was with the victim. As they were standing on Kenneth Avenue near West End Avenue, they heard someone run up behind them. When they turned around, they saw petitioner and Jocelyn Sanders standing in front of them. Sanders asked the victim if he had been involved in any recent carjackings. According to Cannon, the victim denied committing any carjackings. Petitioner then pulled out a gun and waved it back and forth between Cannon and the victim. Cannon testified that the victim subsequently dropped to his knees and held onto Cannon's leg as he denied involvement in the carjacking. Petitioner then asked Sanders "which one" and she pointed to the victim. Cannon testified that petitioner then told him to step aside and petitioner proceeded to shoot the victim several times. According to Cannon, neither he nor the victim were armed at the time. Cannon also testified that neither he nor the victim attacked petitioner. Cannon later identified petitioner in a photo array and from a lineup after petitioner's arrest on March 7, 1999.

The State also presented the testimony of Paul Becnel and Mark Graham. Becnel and Graham testified that they ran to the area of West End to view a fight. Both men testified that they saw what appeared to be a confrontation between petitioner, Sanders and two other men. Becnel and Graham testified that petitioner shot one of the men several times as the man was running away.

Detective Kathleen Argentino testified that Gerald Cannon identified petitioner as the shooter from a photo array. When asked to describe the photographs viewed by Cannon, she said

---

[1] The court takes its facts from the Illinois Appellate Court's recitation of facts in *People v. Walker*, No. 1-01-2258 (Ill. App. Ct. Dec. 19, 2003). *Whitman v. Bartow*, 434 F.3d 968, 969 (7th Cir. 2006) (state court factual determinations are presumed correct and can only be rebutted with clear and convincing evidence).

they were identification record photos of individuals who had been arrested by the Chicago Police Department. At that point, defense counsel objected and made a motion for a mistrial. The trial court denied the motion.

Petitioner testified in his own behalf. He stated that Jocelyn Sanders came to his house on November 10, 1993, asking for his gun because she wanted to confront the person who allegedly carjacked her sometime earlier that year. According to petitioner, he did not want to give her the gun and instead decided to go with her to "make sure everything was okay." At some point, a man known as Egg Nog and another unknown individual joined petitioner and Sanders in the car. They eventually found the victim and Gerald Cannon. Petitioner pulled over and he and his passengers got out of the car. Petitioner testified that he was "real nervous" because he did not know what was going to happen.

As petitioner and Sanders were walking toward Cannon and the victim, an unidentified man suddenly ran up to them. Petitioner testified that he pulled out his gun and told the man to get away from them. Petitioner stated that he did not put away the gun because he was scared and did not know what was going to happen. When they reached the victim and Cannon, Sanders started to argue with the victim. According to petitioner, about 15 people had gathered around and the victim's hands were in his pockets. As Sanders and the victim were arguing, Mark Graham hit the victim. When petitioner jumped back, his gun accidentally went off and the victim fell to the ground. Petitioner testified that he asked if anyone was hurt and it appeared that no one had been shot. As the victim started to get up off the ground, petitioner stated that he was scared because he thought the victim was going to "rush" him. According to petitioner's testimony, he panicked and turned his head and started to shoot. Petitioner stated that he fired roughly five shots. Petitioner

3

immediately fled the scene and when he looked back, he saw the victim running. A friend later informed him that he killed the victim. Petitioner admitted that he never saw a weapon on the victim and that the victim never actually threatened him or attacked him.

Following deliberations, the jury found petitioner guilty of first-degree murder and the trial court sentenced him to a prison term of 35 years.

## III.  Analysis

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 367 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 404. To demonstrate an "unreasonable application" of clearly established federal law, a habeas petitioner must establish that the state court unreasonably applied the controlling legal rule to the facts of the case. *Id.* at 407. The state court's application of Supreme Court precedent must be more than incorrect or erroneous. Rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (state court decision must lie "well outside the boundaries of permissible differences of opinion").

Before a federal court will consider a habeas corpus petition, a petitioner must satisfy several procedural requirements. Each claim must be presented on appeal to the Illinois Appellate Court

and in a petition to the Illinois Supreme Court for discretionary review. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). To satisfy this requirement, a petitioner must fairly present to the state judiciary both the operative facts and legal principles that control each claim. *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). A petitioner's failure to fairly present each habeas claim to the state's appellate and supreme courts in the time and manner required leads to a default of the claim, thus barring the federal court from reviewing the claim's merits. *Boerckel*, 526 U.S. at 848. In addition, a federal court may not review a claim which was presented to the state courts, but which was rejected on an independent and adequate state ground. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). A federal court, however, may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Id.* at 750.

### A. Trial Court's Failure to Give Second Degree Murder Instruction to the Jury

Petitioner's first claim is that his right to due process[2] was violated when the trial court failed to instruct the jury on second degree murder. The state appellate court analyzed this claim based on two theories: both serious provocation and an unreasonable belief in self-defense. Respondent argues that the claim is noncognizable in habeas, and that the aspect of the claim based on serious provocation is procedurally defaulted.

Generally, errors of state law are not cognizable on habeas review. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "The remedial power of a federal habeas court is limited to

---

[2] Petitioner also states that his claim is based on a denial of equal protection. Because he provides no explanation of the nature of such a claim, the court concludes that this claim fails because of an insufficient factual basis under Rule 2(c) of the Rules Governing Section 2254 Cases.

5

violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). Thus, "[b]ecause a state trial court's evidentiary rulings and jury instructions turn on state law, these are matters that are usually beyond the scope of federal habeas review." *Id.* (citing *McGuire*, 502 U.S. at 70-71). However, in some limited circumstances, a state court's jury instruction error may violate a defendant's due process right to a fundamentally fair trial under the Fourteenth Amendment where the state court committed "an error so serious as to render it likely that an innocent person was convicted . . . ." *Id.* at 510.

The Seventh Circuit's opinion in *Perruquet* is instructive here. In that case, the district court dismissed petitioner's due process claim based on the state trial court's refusal to admit evidence through which petitioner sought to establish the defense of self-defense and the court's refusal to instruct the jury on self-defense. *Perruquet*, 390 F.3d at 510. In concluding that the claim was noncognizable, the district court relied on the fact that petitioner did not, beyond citing his right to due process, establish how the trial court's rulings were so grave as to have deprived him of that right. Thus, according to the district court, the petitioner did not provide enough support to bring the claim within the limited power of the federal habeas court. *Id.* at 512.

On appeal, finding that the petitioner drew "enough of a connection between his right to due process and the trial court's (alleged) evidentiary and instructional errors to render his claim cognizable on habeas review," the Seventh Circuit disagreed with the district court's conclusion. *Id.* at 512. Importantly, the Seventh Circuit explained:

> The petition, along with the supporting memorandum that Perruquet filed, does more than merely cite his constitutional right to a fair trial. Perruquet has articulated the theory of self-defense (both excluded and admitted) that supported that theory; and he has argued that preventing him from pursuing the theory of self-defense likely

> resulted in the conviction of an innocent person. Whatever gaps there may be in his petition and supporting memorandum, the basic rationale of Perruquet's due process argument is readily discernible.

*Id.* The Seventh Circuit concluded that the due process claim was, in fact, cognizable because petitioner went beyond merely reciting his reliance on due process and explained why the alleged violation likely resulted in the conviction of an innocent person.

Having reviewed the petition and petitioner's reply, and keeping in mind his *pro se* status, the court concludes that petitioner has presented a cognizable due process claim. While the petition itself does little more than cite to the Fourteenth Amendment, petitioner does, in his reply brief (which he titled "Motion in Opposition to Respondent's Answer to Petitioner's Petition for Writ of Habeas Corpus"), provide more detail concerning his claim. Specifically, he states that the "Illinois Appellate Court opinion covers the ground for petitioner's claim." Mot. in Opp. at 3. He goes on to state that "the petitioner felt threatened where the victim got up from the ground. This statement is clearly grounds for self-defense. added [sic] with the fact that petitioner also claimed that the gun went off accidentally." *Id.* While it is a close call, the court concludes that these statements, along with petitioner's reliance on Fourteenth Amendment due process in his petition, present enough to allow his claim to survive respondent's initial cognizability challenge. The court concludes that "[w]hatever gaps there may be in his petition and supporting memorandum, the basic rationale" of petitioner's argument is discernible. *Perruquet*, 390 F.3d at 512.

Concluding that the due process claim is cognizable, however, is only the first step of the court's analysis. Next, the court must determine whether petitioner's claim succeeds or fails on its merits. To this end, the court notes that because respondent's only argument relied on noncognizability, it did not address the merits of petitioner's due process claim. Further, the court

is also aware that the Illinois Appellate Court did not engage in any federally-based analysis in its discussion of petitioner's jury instruction claim. Where, as here, the state court failed to address the federal nature of petitioner's claim, it is this court's responsibility to determine if the state court opinion is "contrary to" or "an unreasonable application of" federal law as determined by the United States Supreme Court. In the end, the state court need not have cited the controlling Supreme Court case "so long as neither the reasoning nor the result of the state-court decision contradicts" the holding in the federal case. *Early v. Packer*, 537 U.S. 3, 8 (2002).

### 1. Serious Provocation

The court agrees with respondent that part of petitioner's due process claim has been procedurally defaulted and cannot be reviewed by this court. In discussing petitioner's claim that he was entitled to a second degree murder jury instruction based on serious provocation, the Illinois Appellate Court found that the issue had been waived because petitioner "neither tendered such an instruction at trial, nor did he raise this specific issue in his posttrial motion." *State v. Walker*, No. 1-01-2258, at 5.

A federal court will not review a question of federal law decided by a state court if that decision rests on state law grounds that are independent of the federal question and adequate to support the judgment. *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 556 (7th Cir. 2001). A state law ground that provides the basis for a state court decision is independent when the court actually relied on the procedural bar as an independent basis for its disposition of the case. *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 261 (1989)). A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied. *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999).

In light of the fact that the state court rule relied on by the Illinois Appellate Court is "independent of the federal question and adequate to support the judgment," *People v. Foster*, 635 N.E.2d 855 (Ill. App. Ct. 1994) (failure to tender jury instruction and failure to raise jury instruction issue in post-trial motion waives issue for purposes of appellate review), procedural default bars review of the serious provocation aspect of the jury instruction claim.

A federal court, however, may excuse a procedural default if a petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Because petitioner makes no attempt to argue that any exception to the procedural default bar exists, the court cannot review this part of the claim.

### 2. Unreasonable Belief in Self-Defense

The Illinois Appellate Court found that the evidence at trial did not support a jury instruction on the offense of second degree murder. As stated by the Illinois Appellate Court, "A person commits second degree murder when he commits the offense of first degree murder and at the time of the killing he had an unreasonable belief that the circumstances, if they existed, would justify the use of deadly force. A defendant is entitled to a second degree murder instruction where, even if the evidence is slight, it is sufficient to allow a reasonable jury to find in defendant's favor." *Walker*, No. 1-01-2258, at 5-6 (citing 720 ILCS 5/9-2(a)(2) (West 1992)). Under state law, in order to determine whether a defendant has established sufficient evidence to entitle him to a second degree murder instruction, the court may consider factors including "the defendant's testimony, intent or motive, the type of wound suffered by the victim, any previous history of violence between defendant and victim, any physical contact between the defendant and victim, and the circumstances

9

surrounding the incident." *Id*. at 6 (citing *People v. Everette*, 141 Ill. 2d 147, 158 (1990)).

In applying those factors, the state appellate court concluded that the trial court did not abuse its discretion in determining that the evidence did not warrant a second degree murder instruction. The appellate court concluded,

> In the instant case, the victim suffered a fatal gunshot wound to his back. The record shows that defendant, while armed with a gun, accompanied Sanders to find men who allegedly carjacked her earlier in the year. Although defendant testified that he was afraid, the undisputed evidence established that the victim, whom defendant did not even know at the time, did not possess a gun at the time of the shooting. Additionally, the uncontroverted evidence established that the victim neither attacked nor even attempted to hit defendant prior to the shooting. Rather, the record reveals that, just before the shooting, Sanders and the victim were engaged in only a verbal confrontation. Furthermore, defendant testified that as the victim was getting up off the ground, defendant turned his head and started to shoot. Despite defendant's assertion that he felt threatened by the victim's actions, he turned his head and fired randomly, not at the person whom he was purportedly defending himself against. *People v. King*, 293 Ill. App. 3d 739, 743 (1997) (holding that refusal of second degree murder instruction was proper where defendant claimed he saw an individual make a threatening move, but responded by shooting into the group, not at the individual who made the threatening movement).

*Walker*, No. 1-01-2258, at 7.

As described earlier, the trial court's refusal to tender the instruction does not violate due process "unless the refusal would result in a 'fundamental miscarriage of justice.'" *United States ex rel. Bacon v. De Robertis*, 728 F.2d 874, 875 (7th Cir. 1984). The undisputed evidence established that petitioner was armed and looking for the victim, the victim was unarmed, and the victim neither attacked nor even attempted to hit petitioner. Further, petitioner's own testimony belies a self-defense theory – he testified that he turned his head and started shooting randomly. Even if this court were to conclude that the state court erred in failing to give the instruction, that conclusion, standing alone, is insufficient to grant petitioner relief. Rather, the court, in order to find that petitioner's due process rights were violated, must conclude that the failure to give the

10

instruction resulted in the conviction of one who is actually innocent. In light of the circumstances surrounding the shooting, and the fact that petitioner was not even aiming at the victim when he fired the gun, the court cannot reach the necessary conclusion. As a result, this claim fails.

B.     **Improper Prosecutorial Remarks**

While not entirely clear from the petition, it appears that petitioner, in his second claim, argues that his due process[3] rights were violated as a result of certain statements by the prosecutor. The state appellate court refused to consider three of the four comments (including referring to petitioner as a "hit man," an "executioner," and a man who "follows no law") because petitioner neither objected at trial nor included them in his posttrial motion. Because the state court relied on an independent and adequate state ground, the claim, to the extent it relies upon these three statements, is procedurally defaulted. *Foster*, 635 N.E.2d at 896-97. Because petitioner has presented no argument as to cause and prejudice or actual innocence, the court is barred from considering the three statements listed above.

The fourth comment is not procedurally defaulted, however, and must be evaluated by the court. Petitioner asserts that the prosecutor's remark made during rebuttal that the victim's mother and her family waited a long time for justice was improper. In responding, respondent first points out that the state appellate court did not rely on any federal cases or analysis in determining whether or not the comment deprived petitioner of his due process rights. Pointing to *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986), as the controlling United States Supreme Court decision on this issue, respondent argues that, although the state court did not address *Darden* by name in its opinion, the

---

[3] Petitioner also states that his claim is based on a denial of equal protection. Because he provides no explanation of the nature of such a claim, the court concludes that this claim fails because of an insufficient factual basis under Rule 2(c).

11

state court's reasoning and result were consistent with *Darden*, and must be upheld.

Relying on a state case for support, the Illinois Appellate Court concluded that petitioner failed to show that the prosecutor's comment was improper. It concluded,

> Although statements arousing sympathy for the victim's family may be held improper, they can constitute harmless error where the defendant is not substantially prejudiced and where the jury is instructed not to consider closing arguments as evidence. *People v. Barker*, 298 Ill. App. 3d 751, 757 (1998).
>
> Here the record shows that defendant objected to the comment and the trial court immediately ruled and stated, "[t]he jury has heard the evidence. They will rely on the evidence in reaching their decision. The argument made by the attorneys is not evidence." The trial court's ruling and instructions cured any error resulting from the comments. *Barker*, 298 Ill. App. 3d at 757. Furthermore, the evidence was in the record that six years passed before defendant was arrested for the murder and counsel may properly comment on the evidence.

*Walker*, No. 1-01-2258, at 8.

In analyzing this claim, the court recognizes that the Illinois Appellate Court did not analyze this claim under *Darden*. However, as the respondent points out, it need not have cited, or even been aware of, *Darden* "so long as neither the reasoning nor the result of the state-court decision contradicts" the controlling Supreme Court case. *Early*, 537 U.S. at 8.

In order to prove constitutionally-violative prosecutorial misconduct, petitioner must demonstrate both that statements made by the prosecutor were improper and that those statements deprived petitioner of a fair hearing. *Darden*, 477 U.S. at 181. For there to be a due process violation, the comments must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In *Darden*, the United States Supreme Court described the six factors to be considered when determining whether an improper prosecutorial comment was so egregious as to necessitate a new trial:

> (1) whether the prosecutor misstated the evidence, (2) whether the comments implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut.

477 U.S. at 181-82. The court is not to apply these factors in a rigid manner, but should, instead, use them as a guide to determine whether there was fundamental unfairness that infected the trial. *United States ex rel. Madej v. Gilmore*, No. 98 C 1866, 2002 WL 370222, *18 (N.D. Ill. Mar. 8, 2002). For that reason, the weight of the evidence is often characterized as the "most important consideration." *Howard v. Gramley*, 225 F.3d 784, 793 (7th Cir. 2000). Habeas relief cannot be granted where the prosecutorial misconduct did not "have substantial and injurious effect or influence in determining the verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993). The question for this court, then, is whether or not the Illinois Appellate Court's decision was "contrary to" or an "unreasonable application of" *Darden*.

This court's own *Darden* analysis leads it to believe that habeas relief is unwarranted on this claim. The court cannot ignore the fact that while the comment may be understood to improperly arouse sympathy for the victim's family, the comment also reflects the evidence – already in the record – that six years passed before petitioner was arrested for the murder. Despite the fact that the comment was, at least in part, improper, petitioner cannot succeed on this claim because he cannot show prejudice under *Darden*. Looking to the *Darden* factors, the prosecutor's statement did not misstate the evidence, nor did the comment implicate a specific Bill of Rights provision. In addition, the trial judge advised the jury that they should only consider evidence in reaching their decision, and arguments made by attorneys are not evidence. *See United States v. Napue*, 834 F.2d 1311, 1324 (7th Cir. 1987) ("We cannot, of course, know with certainty what effect this curative instruction had upon the jury, but the presumption in our system is that such instructions are taken

seriously."). Finally, the evidence at trial was strong. It showed that petitioner: (1) confronted an unarmed victim and another man over a carjacking; (2) asked his friend, "which one," (meaning which man carjacked her car), (3) told a bystander to move to the side, and (4) proceeded to shoot the victim multiple times, including in the back. In the end, the court concludes that the prosecutor's comment did not so infect the trial with unfairness as to necessitate a new trial.

The state court's analysis and result are indeed consistent with *Darden*. Although the state court did not mention *Darden* by name, it did consider some of the *Darden* factors in its analysis. Namely, the court concluded that the prosecutor did not misstate the evidence and noted that the trial court instructed the jury not to regard closing arguments as evidence. Additionally, the state court, in a different part of its opinion, acknowledged the strength of the evidence against petitioner when it noted that the undisputed evidence established that petitioner fatally shot the victim in the back. The state court also concluded that the evidence against petitioner was "overwhelming." *Walker*, No. 1-01-2258, at 9.

In light of the fact that the state court's conclusion was consistent with *Darden*, the state court's conclusion was not contrary to, or an unreasonable application of, federal law as determined by the United States Supreme Court. Habeas relief is denied on this ground.

### C. Trial Court Failure to Declare Mistrial

Petitioner's third claim is based on alleged violations of his due process and equal protection rights when the trial court erroneously failed to declare a mistrial after the jury was prejudiced by witness testimony. Respondent argues first that any equal protection argument is procedurally defaulted because petitioner failed to raise this argument before the Illinois Appellate Court. The court agrees. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (claim must be raised before every

level of state courts). And, because petitioner does not present any argument supporting cause and prejudice or actual innocence, the court may not review any equal protection claim.

The court draws upon the arguments raised before the Illinois Appellate Court to understand petitioner's due process claim. At trial, a police detective testified that the principal eyewitness, Gerald Cannon, had identified petitioner as the shooter from a photo array. The detective further explained that the photos used in the array were "identification record photos of individuals who had been arrested by the Chicago Police Department." *Walker*, No. 1-01-2258, at 3. Petitioner maintains that the jury was left with the mistaken impression that he had a criminal history. Defense counsel objected and moved for a mistrial, which the trial court denied.

In *Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001), the Seventh Circuit was presented with, and ultimately rejected, a similar argument. In *Anderson*, petitioner argued that he was denied his right to due process because the jury improperly heard evidence that petitioner's photo was from "police photos of persons that had been arrested in the past." 243 F.3d at 1054. The Seventh Circuit concluded,

> The law is clear that a defendant's prior arrest record is inadmissible, and while the reference to [petitioner's] past arrest was only indirect, it was still improper. Yet not every evidentiary error constitutes a denial of due process. Rather, the question is whether the error produced a significant likelihood that an innocent person has been convicted. Given that this was a passing reference and that the prosecution did not focus on it either during questioning or in closing arguments, we conclude that his reference did not affect the jury verdict.

*Id*. (internal citation omitted). Likewise in this case, the reference to petitioner's past arrest, while improper, is not the type of error which would have "produced a significant likelihood that an innocent person has been convicted." *Id*. (quoting *Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999)). As in *Anderson*, there is no indication here that the prosecution focused on the prior

15

arrest either during questioning or in closing argument. In light of the passing nature of the remark and the evidence presented at trial, petitioner's claim does not merit habeas relief.

### D. Appellate Court Decision

Petitioner's final claim is as follows:

> Petitioner contends that his constitutional rights to due process and equal protection in accordance with the Fourteenth amendment of the United States Constitution was violated when the App [sic] Appellate Court of Illinois, First judicial District affirmed the conviction and sentence without thoroughly considering the circumstances and evidence regarding the actual events and the testimony of the witnesses.

Pet. at 6. Petitioner does not specify what "circumstance," "evidence," "actual events," or "testimony" he thinks show that the state appellate court erred. Because this claim is not explained in the petition and was not raised before any state court, it fails for two reasons: (1) because it contains an insufficient factual basis under Rule 2(c); and (2) because it is procedurally defaulted. *Boerckel*, 526 U.S. at 845.

### IV. Conclusion

For all the foregoing reasons, petitioner Jervone Walker's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

                                    ENTER:

                                    _____/s/_____
                                    JOAN B. GOTTSCHALL
                                    United States District Judge

DATED: March 6, 2009